IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMCAST OF CALIFORNIA/ MASSACHUSETTS/MICHIGAN/UTAH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRSTDIGITAL COMMUNICATIONS, LLC, *et al.*<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS<br><br>Case 2:24-cv-249-TS-JCB<br><br>District Judge Ted Stewart<br>Magistrate Judge Jared C. Bennett |

This matter is before the Court on Defendants FirstDigital Communications LLC and

FirstDigital Telecom, LLC's (collectively, "FirstDigital") Motion to Dismiss for Failure to State

a Claim.[1] For the reasons stated below, the Court will deny the Motion.

## I. BACKGROUND

Plaintiff Comcast of California/Massachusetts/Michigan/Utah, LLC filed suit on April 4,

2024, alleging that Defendant FirstDigital Communications, LLC, violated the Federal

Communications Policy Act of 1984 (the "Cable Act") and various regulations of the Federal

Communications Commission (the "FCC") by unlawfully impeding competition in two Utah

residential developments.[2] Plaintiff filed an Amended Complaint on May 2, 2024, adding

additional claims under Utah law.[3]

The relevant facts in the Amended Complaint (the "Complaint") allege as follows.

Plaintiff is a franchised cable operator authorized to provide cable, broadband, voice, and

---

[1] Docket No. 43.

[2] Docket No. 2.

[3] Docket No. 33.

telecommunications services to residential and commercial subscribers in Lehi City and Vineyard City, Utah. First Digital is a telecommunications provider offering various communications services throughout Utah. Significant to this case, FirstDigital provides its telecommunications services to Traverse Mountain residential development, located in Lehi City, and Water's Edge residential development, located in Vineyard City.

In 2023 and 2024, Lehi City granted permits to Plaintiff authorizing installation of Plaintiff's cable system in the Lehi Public Utility Easement (the "Lehi PUE"). On January 10, 2024, well after Plaintiff began the necessary work to install its cable system in Traverse Mountain, FirstDigital sent a letter to Plaintiff asserting that, pursuant to an agreement with Traverse Mountain, FirstDigital "holds the exclusive right to install, maintain, and operate telecommunication equipment and facilities in [the Lehi PUE] in Traverse Mountain[,] as well as the exclusive right to grant easements . . . with respect to those activities."[4] FirstDigital then demanded that Plaintiff cease installation of its cable system and insisted that, to serve any customers in Traverse Mountain, Plaintiff must pay to "interconnect with FirstDigital's network."[5] While FirstDigital acknowledged that Plaintiff had a right to access the Lehi PUE, it asserted that Plaintiff "could not connect its cable system to the home of any Traverse Mountain customer (called 'service drops') because it would cross FirstDigital's Traverse [Mountain] Telecommunications Easement."[6]  "Without the ability to cross the Traverse Telecommunications Easement with customer service drops, [Plaintiff] is precluded from

---

[4] *Id.* ¶ 47 (internal quotation marks and citation omitted).

[5] *Id.* ¶ 50.

[6] *Id.* ¶ 52.

providing facilities-based telecommunications, multichannel video, or other services to requesting customers."[7]

FirstDigital asserts similar exclusive rights as to the Water's Edge Development in Vineyard City.[8] In 2023, Plaintiff applied to Vineyard City and Vineyard Public Works Department (collectively, "Vinyard") for encroachment permits to allow Plaintiff to install its cable system in the Vineyard PUE. Vinyard issued the encroachment permits. However, on January 4, 2024, after Plaintiff had constructed approximately 80% of its cable system in the Vineyard PUE, Vineyard revoked Plaintiff's permits and explained that "[a]t the time of approval[,] the city was not aware that there was an exclusive franchise agreement with FirstDigital and that if Comcast wishes to install more infrastructure in the Water's Edge Development, specifically they will actually need to work with FirstDigital and the Water's Edge HOA directly for access to that PUE."[9] Plaintiff asserts that, upon information and belief, their permits were revoked at FirstDigital's request. FirstDigital has claimed an exclusive easement and right to operate communications facilities in Water's Edge pursuant to an agreement FirstDigital entered into with Water's Edge that "purports to grant FirstDigital exclusive rights to deploy communications facilities *anywhere* in Water's Edge."[10]

Plaintiff asserts the following eight causes of action against FirstDigital: the First and Fifth Causes of Action assert violations of the Cable Act; the Second and Sixth Causes of Action assert violation of regulations adopted by the FCC under 47 U.S.C. § 401(b); the Third and

---

[7] *Id.* ¶ 57

[8] *Id.* ¶ 58.

[9] *Id.* ¶ 70 (internal quotation marks and citations omitted).

[10] *Id.* ¶ 73.

Seventh Causes of Action assert Defendants violated the Utah Public Utility Act[11] (the "UPUA"); and the Fourth and Eighth Causes of Action assert Intentional Interference with Economic Relations.

Plaintiff seeks declaratory relief, a permanent injunction, and money damages in relation to FirstDigital's purported interference as detailed in the causes of action. FirstDigital seeks dismissal of each of the eight causes of action asserted against it.

## II.  LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[12] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[13] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[14] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[15]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[16] As the Court in *Iqbal* stated,

---

[11] Utah Code Ann. §§ 54-1-1 to 54-26-901.

[12] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[16] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[17]

In considering a motion to dismiss, a district court considers not only the complaint "but also the attached exhibits,"[18] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[19] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[20]

### III.  DISCUSSION

#### a.  The Cable Act Causes of Action

Plaintiff's first and fifth causes of action rely primarily on 47 U.S.C. § 541(a)(2) of the Cable Act, which provides that "[a]ny franchise shall be construed to authorize the construction of a cable system over public-rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses." Defendant asserts that these claims must be dismissed because the easements at issue are private easements and the provision of the Cable Act on which Plaintiff relies applies only to public easements.

#### 1.  Traverse Mountain Easement (First Cause of Action):

Plaintiff's First Cause of Action asserts that FirstDigital has violated § 541(a)(2) by using its Traverse Mountain easement to prevent Plaintiff from connecting its cable system from the

---

[17] *Iqbal*, 556 U.S. at 679 (internal citations, quotation marks, and alterations omitted).

[18] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[19] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[20] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Lehi PUE to a requesting customer's residence. Notably, the Complaint states that FirstDigital has acknowledged Plaintiff's authority to connect to the Lehi PUE, but maintains that Plaintiff cannot cross FirstDigital's private easement to connect its cable system to the individual homes within Traverse Mountain without first meeting FirstDigital's conditions. Namely, FirstDigital asserts that Plaintiff may provide its services to the residences within Traverse Mountain only by interconnecting Plaintiff's cable system with FirstDigital's system and paying FirstDigital recurring and substantial fees. Plaintiff asserts that, in some cases, the fees required by FirstDigital would exceed what Plaintiff charges the individual users for Plaintiff's services. Plaintiff's first cause of action asserts that FirstDigital's efforts to prevent Plaintiff from installing its facilities violates the Cable Act.

In its Motion, FirstDigital asserts that every circuit court to consider the issue has concluded that § 541(a)(2) requires access only to easements that have been dedicated for public use, and does not provide a cause of action to access private easements.[21] Therefore, FirstDigital argues that, because its Traverse Mountain easement is a private easement on private property, § 541(a)(2) is inapplicable and Plaintiff's First Cause of Action must be dismissed.

In its Response, Plaintiff argues that the Complaint effectively asserts "that FirstDigital is violating section 541(a)(2) by using its private easement—which effectively creates a two-foot moat in front of each resident's premises—to prevent Comcast from connecting its facilities *from the public utility easement to any resident's premises.*"[22] Plaintiff explains that "[w]ithout the

---

[21] Docket No. 43, at 6 (citing *Cable Ariz. Corp. v. Coxcom, Inc.*, 261 F.3d 871, 873–74 (9th Cir. 2001); *TCI of N.D., Inc. v. Schriock Holding Co.*, 11 F.3d 812, 814–15 (8th Cir. 1993); *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 991 F.2d 1169, 1173 (4th Cir. 1993); *Cable Holdings of Ga., Inc. v. McNeil Real Est. Fund VI, Ltd.*, 953 F.2d 600 (11th Cir. 1992); *Cable Invs., Inc. v. Woolley*, 867 F.2d 151, 155 (3d Cir. 1989)).

[22] Docket No. 47, at 10.

ability to install these customer drops, [Plaintiff] is unable to use the public utility easement to provide cable and non-cable services to customers—which is the very reason the Cable Act grants cable operators unrestricted access to such easements."[23]

In support of its argument, Plaintiff cites to the Eleventh Circuit's opinion in *Centel Cable Television Co. of Florida v. Thos J. White Development Corp.*,[24] wherein the court found that a developer violated § 541(a)(2) by not allowing the plaintiff, a franchised cable operator, to access its private roads, which was necessary to reach to the public utility easement at issue. In that case, the residential development's plat dedicated a public utility easement to certain utility providers. However, the plat provided that all roads within the development were private rights-of-way and dedicated easements on the roads to a certain cable company with which the developer had entered into an agreement to provide exclusive cablevision services to the residents of the development. The developer also allowed other utility companies providing other utility services aside from cablevision services to access the road. When the plaintiff sought to access the dedicated public utility easement thought the private roads, the developer forced the plaintiff's crew to leave, asserting that they were trespassing on developer's private property.

The *Centel* court explained that the Cable Act "intended to forbid any private agreements that would prevent a cable franchise from using dedicated utility easements."[25] The court found that the developer's plat and agreement, allowing only certain utility companies access to its

---

[23] *Id.*

[24] 902 F.2d 905 (11th Cir. 1990).

[25] *Id.* at 909.

7

private roads, were designed to control access to the dedicated utility easements. The court concluded that such an agreement violated § 541[26] of the Cable Act.

The Court agrees with FirstDigital that *Centel* is distinguishable from this case in that Plaintiff does not dispute that it has access to the Lehi PUE. Instead, Plaintiff complains that FirstDigital's Traverse Mountain easement prevents Plaintiff from connecting its services from the Lehi PUE to the individual residences, which are located on private property. However, while not entirely factually analogous, the Court finds *Centel* to be both instructive and persuasive.

While Plaintiff's First Cause of Action seeks access to a private easement on private property, as argued by FirstDigital, the Court finds it significant that the purpose of the sought access is to make use of a public utility easement. Plaintiff undisputedly is able to access the Lehi PUE. However, the access is meaningless because the private easement asserted by FirstDigital prevents Plaintiff from connecting its utility to any residence from the Lehi PUE, thereby preventing FirstDigital from meaningful *use* of the Lehi PUE. None of the cases cited by FirstDigital addresses the issue of whether a private easement may be placed and used in a manner to allow selective access to and use of a dedicated public utility easement. By contrast, the Court is persuaded by the *Centel* court that permitting such would thwart the Cable Act's intended purpose of "forbid[ding] any private agreements that would prevent a cable franchise from *using* dedicated utility easements."[27] Similar to *Centel*, the Complaint here alleges that

---

[26] The case references § 621, which has been recodified as § 541 since the issuance of the decision.

[27] *Centel*, 902 F.2d, at 909 (emphasis added); *see also San Juan Cable LLC v. Puerto Rico Tel. Co.,* 612 F.3d 25, 30 (1st Cir. 2010) ("Once a cable operator receives a franchise, it enjoys the right to build a cable system over public rights-of-way and through compatible easements. It may then *provide cable service* in the franchised area.") (emphasis added) (internal citation omitted).

FirstDigital has granted other utility companies, which do not provide the services offered by FirstDigital, access to its private easement. It further alleges that FirstDigital has selectively disallowed Plaintiff from accessing such easement, which access is necessary to make use of the Lehi PUE.

In sum, that Court finds that the Complaint's assertions that FirstDigital was granted a private easement at Traverse Mountain and that FirstDigital has used that easement to selectively prohibit Plaintiff from making use of the Lehi PUE is sufficient to state a claim under § 541(a)(2). The Court is not convinced, and can find no authority to support that FirstDigital can use its conveniently placed easement to creatively circumvent the Cable Act's requirement that [a]ny franchise shall be construed to authorize the construction of a cable system over public-rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses."[28]

Based on the above analysis, the Court finds that, accepting the facts alleged in the Complaint as true and viewing them in the light most favorable to Plaintiff, Plaintiff's First Cause of Action states a plausible claim under the Cable Act. Accordingly, the Court will deny FirstDigital's Motion to Dismiss as to Plaintiff's First Cause of Action.

2.   Water's Edge (Fifth Cause of Action):

Plaintiff's Fifth Cause of Action similarly asserts that FirstDigital has violated § 541(a)(2) by using its Water's Edge easement to prevent Plaintiff from accessing the Vineyard PUE. FirstDigital's Motion again asserts that the Court must dismiss this cause of action because Plaintiff is claiming a right to access a private easement, which is not provided by § 541(a)(2). For the same reasons discussed above, the Court disagrees with FirstDigital's assessment.

---

[28] 47 U.S.C. § 541(a)(2).

Attached to the Complaint is the Communications Easement Agreement between Water's Edge and FirstDigital. This agreement grants FirstDigital "an exclusive easement and right-of-way to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, remove and manage Communication Facilities on, under over and across [Water's Edge]."[29] Also attached to the Complaint is the Water's Edge Plat, which includes an "Owner's Dedication," stating in part that the owners of Water's Edge "do hereby dedicate for the perpetual use of the public all roads and other areas shown on this plat as intended for public use" and that the owners "also hereby convey to any and all public utility companies a perpetual non-exclusive easement over the public utility easements shown on this plat, the same to be used for the installation, maintenance and operation of utility lines and facilities."[30]

In support of its position, FirstDigital points the Court to "Note 4" on the Water's Edge Plat, which states "[d]eveloper shall except from any public utility easement shown thereon, and reserve to itself and its designee, the right to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, remove and manage communications facilities."[31] Defendant argues that the Note 4 language, along with the Communications Easement Agreement, demonstrates that Plaintiff is again improperly seeking access a private easement.

FirstDigital correctly describes that Note 4 and the Communications Easement Agreement show the intent of Water's Edge to grant FirstDigital a private easement in all areas of the PUE regarding communications facilities only. Regardless, however, the Court finds Plaintiff has stated a claim under § 541(a)(2) where the Complaint clearly alleges that

---

[29] Docket No. 33-13 ¶ 2.

[30] Docket No. 33-8, at 2.

[31] *Id.*

10

FirstDigital's private communications easement is interfering with the Plaintiff's ability to access the Vineyard PUE.

Plat B demonstrates the clear dedication of a public utility easement, which Plaintiff alleges they are unable to access as a result of FirstDigital's private communications easement. Even more so than the Traverse Mountain easement, the facts alleged here are analogous to the facts in *Centel*, discussed in the previous section. Very similar to the defendant in *Centel,* the Complaint alleges that FirstDigital is selectively blocking Plaintiff's access to a dedicated public utility easement by claiming that the path to access is blocked by a private easement. Accordingly, the Court declines to dismiss Plaintiff's Fifth Cause of Action on the basis that FirstDigital's easement is a private easement.

FirstDigital further asserts that Plaintiff's Fifth Cause of Action must be dismissed because its agreement with Water's Edge does not preclude Plaintiff from providing its cable services, but instead expressly contemplates that FirstDigital grant access to other providers. The Court disagrees with this assessment. As explained in Plaintiff's Response, the agreement provides that interconnection with FirstDigital's facilities is required for communications service providers to access the residents at Water's Edge. It further provides that FirstDigital may assess a fee to allow such access. Plaintiff's Complaint also asserts that the fees FirstDigital has demanded in relation to the Traverse Mountain easement are not "economically feasible."

FirstDigital has not cited any authority suggesting that a claim under § 541(a)(2) may be defeated if a franchisee, that is otherwise denied access to public utility easement, can access the easement by complying with certain conditions set by another franchisee. By contrast, it is certainly plausible that conditioning access based on adherence to certain conditions, including payment of a cost-prohibitive fee as Plaintiff has alleged here, would be tantamount to an outright denial of access and use.

Based on the above analysis, the Court finds that, accepting the facts alleged in the Complaint as true and viewing them in the light most favorable to Plaintiff, Plaintiff's Fifth Cause of Action states a plausible claim under the Cable Act. Accordingly, the Court will deny FirstDigital's Motion to Dismiss as to Plaintiff's Fifth Cause of Action.

    *b.  Exclusivity Rules of the FCC*

Plaintiff's Second and Sixth Causes of Action assert it is entitled to declaratory and injunctive relief under 47 U.S.C. § 401(b) because FirstDigital violated the FCC's prohibition against exclusivity agreements. FirstDigital asserts these claims must be dismissed because (1) Section 401(b) does not provide for a private right of action to enforce the FCC's exclusivity rules; and (2) even if did, the Complaint does not allege sufficient facts to support a cause of action under the FCC's exclusivity rules or to support standing.

    1.  Private Right of Action under § 401(b)

Section 401(b) provides, "[i]f any person fails or neglects to obey any order of the [FCC] other than for the payment of money, while the same is in effect, the [FCC] or any party injured thereby . . . may apply to the appropriate district court of the United States for the enforcement of such order." The FCC, through its regulations, has prohibited common carriers from entering into or enforcing "any contract, written or oral, that would in any way restrict the right of any residential multiunit premises owner, or any agent or representative thereof, to permit any other common carrier to access and serve residential tenants on that premises."[32] FirstDigital asserts that, because the exclusivity rules are derived from administrative rulemaking procedures, they are not an "order" of the FCC and, therefore, § 401(b) does not provide a private right of action for the enforcement of this rule.

---

[32] 47 C.F.R. § 64.2500(b).

The circuit courts that have considered whether orders derived from the FCC's rulemaking procedures amount to an "order of the Commission" under § 401(b) are not in agreement. FirstDigital argues the Court should follow the reasoning of the First Circuit, which has held that § 401(b) "may not be used by an aggrieved party to enforce FCC orders promulgated through the Commission's *rulemaking* process."[33] Plaintiff, on the other hand, urges the Court to adopt the position of the significant majority finding that § 401(b)'s right of action to enforce "any order of the Commission" can encompass FCC rulemaking orders.[34]

The Tenth Circuit has not yet weighed in on the issue. However, upon reviewing the analysis of the differing courts of appeal, the Court is firmly persuaded by the majority view. First, the First Circuit's minority view relies on the Administrative Procedure Act's (the "APA") definition of "order" in reaching its holding.[35] However, as explained by several courts since the First Circuit's order, "the APA's definition of an 'order' does not control . . . because § 401(b) predates the APA by nearly [12] years."[36] "Moreover, as the Ninth Circuit explained in

---

[33] *San Juan Cable LLC*, 612 F.3d at 33 (citing *New Engl. Tel. & Tel. Co. v. PUC of Me.*, 742 F.2d 1, 4–5 (1st Cir. 1984)).

[34] *See, e.g., Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013); *Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 913 F.2d 305, 308 (6th Cir. 1990); *Hawaiian Tel. Co. v. Pub. Utils. Comm'n*, 827 F.2d 1264, 1270–72 (9th Cir. 1987), *cert. denied*, 487 U.S. 1218 (1988); *S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n*, 744 F.2d 1107, 1115 (5th Cir. 1984), *vacated and remanded for other reasons*, 476 U.S. 1166 (1986); *Ill. Bell Tel. Co. v. Ill. Com. Comm'n*, 740 F.2d 566, 571 (7th Cir. 1984); *Sw. Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 738 F.2d 901, 908 (8th Cir. 1984), *vacated and remanded for other reasons*, 476 U.S. 1167 (1986)).

[35] *New Engl. Tel. & Tel. Co.*, 742 F.2d at 5 ("[T]he Administrative Procedure Act defines the word 'order' as 'a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency *in a matter other than rulemaking*.') (quoting 5 U.S.C. § 551(6)).

[36] *Lansdowne*, 713 F.3d at 200; *see also Hawaiian Tel. Co.*, 827 F.2d at 1271 ("To begin with, we find no authority supporting the proposition that the APA's rule-order distinction should be imported into the Communications Act."). *But see New England Tel. & Tel. Co.*, 742 F.2d at 5 ("Although this definition applies to the APA, enacted in 1946, and not necessarily to the Communications Act, enacted in 1934, the APA was the product of extensive study of pre-

*Hawaiian Telephone*, . . . when Congress wanted to incorporate APA definitions into the Communications Act, it did so expressly—for example, explicitly defining the term 'adjudication' by reference to the APA three times in 47 U.S.C. § 409(a)–(c). That Congress did not do so with regard to the term 'order' in § 401(b) shows that it did not intend for the APA's limited definition of that term to apply here."[37] Further in support of the majority viewpoint, in *Columbia Broadcasting System, Inc. v. United States*,[38] "the Supreme Court construed the exact phrase at issue here, 'any order of the Commission,' to include some FCC rulemaking orders in the context of 47 U.S.C. § 402(a), which provides a right of action for setting aside an FCC order."[39] "In asking us to construe 'order' more narrowly in the context of § 401(b) than did the Supreme Court in interpreting the neighboring § 402(a), [FirstDigital] faces the natural presumption that identical words used in different parts of the same act are intended to have the same meaning."[40]

Notably, several circuits within the majority have found that rulemaking orders do not always meet the requirements of § 401(b). Instead, "only those that require a defendant to take concrete actions" can be used to enforce a private right of action for purpose of § 401(b).[41] "The reason for this rule is self-evident: if a rulemaking order merely announces agency findings or broad policy considerations without actually imposing specific obligations on identifiable

---

existing procedure. . . . Thus, even if pre-APA statutes used the term 'order' inconsistently, procedural coherence warrants reference to the APA's definitions as a starting point.").

[37] *Lansdowne*, 713 F.3d at 200; *see also Hawaiian Tel. Co.*, 827 F.2d at 1271 ("When Congress intended the APA's definition of a given term to be incorporated into the Communications Act, it said so.").

[38] 316 U.S. 407 (1942).

[39] *Lansdowne*, 713 F.3d at 200.

[40] *S. Cent. Bell Tel. Co.*, 744 F.2d at 1117 (internal quotation marks and citation omitted).

[41] *Lansdowne,* 713 F.3d at 200.

entities, a § 401(b) action to enforce that order would present a court with nothing but generic abstractions to enforce."[42]

Here, the FCC's exclusive access prohibition orders cited by Plaintiff clearly define the roles of the parties: a cable operator or provider of multichannel video programming distributors ("MVPDs") are prohibited from "enforce[ing] or execut[ing] any provision in a contract that grants to it the exclusive right to provide any video programming service;"[43] and a "common carrier" is prohibited from "enter[ing] into or enforce[ing] any contract . . . that would in any way restrict the right of any residential multiunit premises owner . . . to permit any other common carrier to access and serve residential tenants on that premises."[44]

Based on the above analysis, the Court finds that the FCC's exclusivity agreement prohibition orders cited by Plaintiff provide it with a private right of action under § 401(b).

2.  Supporting Allegations in the Complaint

FirstDigital next alleges that the Compliant fails to allege sufficient facts to support a violation of the relevant exclusivity orders. As stated, Plaintiff asserts its Second and Sixth causes of action under § 401(b) through certain exclusivity orders issued by the FCC and subsequently codified in the Federal Regulations.[45]

---

[42] *Id.*

[43] 47 C.F.R. § 76.2000(a). The Complaint cites directly to the relevant FCC Orders, however the Court has cited to the respective federal regulations wherein the orders were codified for simplicity. *See* Docket No. 33 ¶¶ 26–28 (citing *In re Promotion of Competitive Networks*, 15 FCC Rcd. 22983, 22987 (2000); *Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 22 FCC Rcd. 20235 (2007); *Promotion of Competitive Networks in Local Telecommunications Markets*, 23 FCC Rcd. 5385 (2008)).

[44] 47 C.F.R. § 64.2500(b).

[45] Docket No. 33 ¶¶ 27, 28.

FirstDigital asserts that Plaintiff has not stated a claim under 47 C.F.R. § 76.2000, regarding MVPDs, because it has not alleged that FirstDigital is an MVPD or the like, as required by the Regulations. FirstDigital also asserts that Plaintiff has not stated a claim under 47 C.F.R. § 64.2500, regarding telecommunications carriers or "common carriers." The Court will first address Defendant's arguments regarding 47 C.F.R. § 64.2500.

47 C.F.R. § 64.2500(b) provides, "[n]o common carrier shall enter into or enforce any contract, written or oral, that would in any way restrict the right of any residential multiunit premises owner, or any agent or representative thereof, to permit any other common carrier to access and serve residential tenants on that premises." FirstDigital argues that the Complaint (1) fails to allege that either FirstDigital or Plaintiff is or operates as a "common carrier," or provide "any facts even suggesting as much;"[46] and (2) fails to allege that FirstDigital's agreements with Traverse Mountain and Water's Edge exclude other communication providers from seeking to access and serve the residents therein.

First, FirstDigital asserts that "[t]o qualify as a 'common carrier,' an entity must provide 'telecommunication services,'"[47] and the Complaint fails to allege any facts supporting that Plaintiff provides or seeks to provide telecommunications services at either Traverse Mountain or Water's Edge. FirstDigital further argues that Plaintiff lacks standing for similar reasons.

In its Response, Plaintiff points the Court to the following assertions in the Complaint:

- "Upon information and belief, FirstDigital has entered into telecommunications franchise agreements with Lehi City and Vineyard City authorizing it to provide telecommunications and other communications services . . . . FirstDigital is currently offering broadband internet and telecommunications services to customers in the Traverse Mountain and Water's Edge developments."[48]

---

[46] Docket No. 43, at 15.

[47] *Id.*

[48] Docket No. 33 ¶ 12.

- "Comcast is a franchised cable operator authorized . . . in Lehi City and Vineyard City to provide . . . telecommunications services."[49]

- The Traverse Mountain Easement "would preclude Comcast from installing and using its own drop lines to connect homes in the development . . . to provide multichannel video, telecommunications, and other communications services to residents."[50]

- "First Digital further demanded that to provide end user services to a customer (i.e. Comcast's multichannel video, telecommunications, and other communications services) in Traverse Mountain, Comcast must pay FirstDigital."[51]

- "Without the ability to cross the Traverse Telecommunications Easement with customer service drops, Comcast is precluded from providing facilities-based telecommunications, multichannel video, or other services to requesting customers using its franchised cable system in the Lehi PUE."[52]

Viewing these asserted facts in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom, the Court finds that the Complaint alleges sufficient facts to support that both Plaintiff and FirstDigital are "common carriers" subject to 47 C.F.R. § 64.2500(b) and, thereby, support a claim under § 401(b).

FirstDigital asserts, without citation, that Plaintiff is required to allege "that it engages in the provision of telecommunications services or is, at least, authorized as a common carrier."[53] It further argues that Plaintiff's assertions that it provides "telecommunications" and not "telecommunications services" is insufficient to state a claim as each term is defined in the Communications Act and are not interchangeable. The Court is unpersuaded that these alleged deficiencies amount to a failure to state a plausible claim for relief.

---

[49] *Id.* ¶ 7.

[50] *Id.* ¶ 53.

[51] *Id.* ¶ 55.

[52] *Id.* ¶ 57.

[53] Docket No. 43, at 16.

FirstDigital also asserts that "the Court can take judicial notice of Comcast's lack of authority to operate as a 'common carrier[]'"[54] based on the fact that Comcast is not listed on certain websites hosted by the Utah Public Service Commission or the FCC, which designate companies granted the requisite authorizations. Assuming the Court found it appropriate to take judicial notice that the Plaintiff is not listed on the cited websites, the Court would then have to go several steps further and assume facts disputed by the Plaintiff and not included in the Complaint to reach the conclusion that Plaintiff is not a "common carrier." Such would be inappropriate and the Court declines to do.

Second, in support of its argument that Plaintiff's Second and Sixth Causes of Action should be dismissed, FirstDigital argues that Plaintiff has failed to plead that the Traverse Mountain and Water's Edge agreements are exclusive. To the extent FirstDigital argues that Plaintiff has failed to allege that these agreements would "in any way restrict the right of any residential multiunit premises owner . . . to permit any other common carrier to access and serve residential tenants on that premises,"[55] the Court disagrees.

Section 64.2500(b) includes broad language prohibiting common carriers from entering an agreement that would "in any way" restrict the Water's Edge and Traverse Mountain owners from allowing any other common carrier "to access and serve" the residents thereon. The Complaint clearly alleges that FirstDigital has limited Plaintiff's ability to access and serve these residents, and that FirstDigital has done so through its agreements with the Water's Edge and Traverse Mountain owners. The Court therefore finds that Plaintiff has sufficiently stated a claim under § 401(b) in both its Second and Sixth Causes of Action. For the same reasons the Court

---

[54] *Id.* at 18.

[55] 47 C.F.R. § 64.2500(b).

finds Plaintiff has sufficiently stated a claim under § 401(b), the Court rejects FirstDigital's arguments that Plaintiff has failed to allege it has standing to bring a claim under § 401(b).

Because the Court has found that Plaintiff has alleged sufficient facts to support FirstDigital is in violation of 47 C.F.R. § 64.2500(b), thereby invoking a plausible claim under § 401(b), the Court need not determine whether the Complaint supports that FirstDigital is also in violation of 47 C.F.R. § 76.2000 for purposes of resolving this Motion. Based on the above analysis, the Court will deny Defendant's Motion as to the Second and Sixth Causes of Action.

    *c.*  *Claims under Utah Law*

Finally, FirstDigital seeks dismissal of Plaintiff's claims under the UPUA (Third and Seventh Causes of Action) and for Intentional Interference with Economic Relations (Fourth and Eighth Causes of Action).

    1.  UPUA Claims

The UPUA prohibits a public utility from "interfer[ing] with any facility of another public utility within the public utility easement"[56] and "acquir[ing] . . . any right, title, or interest in a public utility easement . . . that is adverse to or interferes with a public utility's full use of the easement for the purposes for which the easement was created."[57]

Regarding the Third Cause of Action, FirstDigital argues that Plaintiff has "failed to plead any facts suggesting that FirstDigital 'interfered' with Comcast's access to the Lehi PUE."[58] For largely the same reasons the Court declined to dismiss Plaintiff's First Cause of Action, discussed above, the Court finds Plaintiff has alleged sufficient facts to support that First

---

[56] Utah Code Ann. § 54-3-27(4)(b)(i).

[57] *Id.* § 54-3-27(6).

[58] Docket No. 43, at 21.

Digital has "interfered" with Plaintiff's right[59] to access the Lehi PUE through its purported private easement at Traverse Mountain.

FirstDigital next asserts that the Seventh Cause of Action must be dismissed because the "UPUA protects a public utility's use of a PUE only 'for the purpose for which the easement was created,'"[60] and Plaintiff has failed to show that FirstDigital interfered with Plaintiff's right to use the easement for the purpose for which it was created. In support, FirstDigital cites to Note 4 of the Water's Edge Plat which seeks to expressly limit the scope of the Vineyard PUE by "exempt[ing] from any public utility easement . . . and reserve to itself and its designee the right to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, remove, and manage communications facilities."[61]

The Court is not persuaded by FirstDigital's interpretation of the statutory language. As noted by Plaintiff, the referenced language "for the purpose for which the easement was created" refers to the public utility easement, not FirstDigital's purported private easement.[62] As discussed in the above section regarding Plaintiff's Fifth Cause of Action, Plaintiff has sufficiently alleged that FirstDigital has used its purported private easement to prohibit Plaintiff from accessing the Vineyard PUE. Under the UPUA, Plaintiff, as a public utility, has a "right to install, maintain, [and] operate . . . utility facilities" within a public utility easement. Because the

---

[59] *See* Utah Code Ann. § 54-3-27(2)(a) ("A public utility easement provides a public utility with: (i) the right to install, maintain, operate, repair, remove, replace, or relocate public utility facilities; and (ii) the rights of ingress and egress within the public utility easement for public utility employees, contractors, and agents.").

[60] Docket No. 43, at 23.

[61] *Id.* (quoting Docket No. 33-13, at 2).

[62] *See e.g.*, Docket No. 43, at 10 ("[T]he Communications Easement Agreement that Comcast wants to access is a private easement for communications facilities.") (internal citation omitted).

Complaint sufficiently alleges that FirstDigital has asserted a right in the Vineyard PUE which interferes with Plaintiff's ability to access the Vineyard PUE for the purposes the *Vineyard PUE* was intended, namely for installation of public utilities,[63] the Court finds Plaintiff has sufficiently pleaded a claim under the UPUA and declines to dismiss Plaintiff's Seventh Cause of Action.

2.   Intentional Interference with Economic Relations

"To recover damages for tortious interference, a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[64] FirstDigital's sole argument for dismissal of these Counts is that Plaintiff cannot demonstrate the "improper purpose or by improper means" element because each of Plaintiff's claims asserted in the Complaint fail. Because the Court has not found it appropriate to dismiss all, or any, or Plaintiff's claims, the Court need not address this argument. Upon review of the Complaint, the Court finds that the Complaint alleges sufficient facts to support a plausible claim of Intentional Interference with Economic Relations as to FirstDigital's actions in both the Traverse Mountain and Water's Edge developments. Accordingly, the Court declines to dismiss Plaintiff's Fourth and Eighth causes of action.

IV. CONCLUSION

It is therefore

---

[63] *See* Docket No. 33-8, at 2 ("The undersigned owners also hereby convey to any all public utility companies a perpetual, non-exclusive easement over the public utility easements shown on this plot, the same to be used for the installation and operation of utility lines and facilities.").

[64] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 65, 201 P.3d 966 (internal quotation marks and citation omitted).

ORDERED that Defendant's Motion to Dismiss (Docket No. 43) is DENIED

DATED this 30th day of September, 2025.

BY THE COURT:

_____

Ted Stewart
United States District Judge