Stephen E.W. Hale (5285) (shale@parrbrown.com)
James L. Ahlstrom (8704) (jahlstrom@parrbrown.com)
Kade N. Olsen (17775) (kolsen@parrbrown.com)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Ira T. Kasdan (*pro hac vice*) (ikasdan@kelleydrye.com)
Edward A. Yorkgitis, Jr. (*pro hac vice*) (cyorkgitis@kelleydrye.com)
**KELLEY DRYE & WARREN LLP**
3050 K Street NW, Ste. 400
Washington, DC 20007
Telephone: (202) 342-8540

*Attorneys for Defendants FirstDigital Communications, LLC, and FirstDigital Telecom, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| COMCAST OF CALIFORNIA/ MASSACHUSETTS/MICHIGAN/UTAH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRSTDIGITAL COMMUNICATIONS, LLC and FIRSTDIGITAL TELECOM, LLC,<br><br>Defendants. | **ANSWER TO FIRST AMENDED COMPLIANT AND COUNTERCLAIMS**<br><br>Case No. 2:24-cv-00249-TS-JCB<br><br>Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

FirstDigital Communications, LLC and FirstDigital Telecom, LLC (together, "FirstDigital") hereby answers the First Amended Complaint filed by Comcast of California/Massachusets/Michigan/Utah LLC ("Comcast"). Unless an allegation is specifically admitted, the allegation is denied:

## NATURE OF CASE

1. FirstDigital admits this dispute turns on a dispute about residential developments in Lehi and Vineyard City, but denies that its actions are unlawful. Unless otherwise admitted, denied.

2. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

3. FirstDigital admits this paragraph describes the nature of Comcast's allegations, but denies that Comcast is entitled to any relief in this matter and denies that FirstDigital's actions were unlawful. Unless otherwise admitted, denied.

4. Denied.

5. FirstDigital admits this paragraph describes the nature of Comcast's allegations, but denies that Comcast is entitled to any relief in this matter. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, or unless otherwise admitted, denied.

## THE PARTIES

6. FirstDigital lacks knowledge or information sufficient to form a belief about the truth ("lacks information") of this allegation and accordingly denies it.

7. FirstDigital lacks information about this allegation and accordingly denies it.

8. Admitted.

9. Admitted.

10. FirstDigital admits that it is a telecommunications provider in some locations in Utah, and that it holds a Certificate of Public Convenience and Necessity ("CPCN") granted by the Public Service Commission of Utah authorizing it to operate as a facilities-based competitive local exchange carrier. In addition, Exhibit A to the First Amended Complaint speaks for itself. To the extent a response is required about Exhibit A to the First Amended Complaint, denied. Unless otherwise admitted, denied.

11. FirstDigital admits that it is a telecommunications provider in some locations in Utah, and that it offers a range of communications in Utah. Unless otherwise admitted, denied.

12. FirstDigital admits that FirstDigital has entered into telecommunications franchise agreements with Lehi City and Vineyard City, and that it offers a range of telecommunications, other communications, and broadband internet access service in the Traverse Mountain and Water's Edge developments. The remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

13. Admitted.

14. FirstDigital admits Vineyard City is a municipality in Utah County in the State of Utah, but lacks information about the remainder of this allegation and accordingly denies it. Unless otherwise admitted, denied.

15. FirstDigital lacks information about this allegation and accordingly denies it.

## JURISDICTION AND VENUE

16. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

17. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

18. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

19. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

## FACTUAL ALLEGATIONS

### I. Background

20. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

21. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

22. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

23. FirstDigital alleges that the referenced Cable Act and the FCC orders and other legal authority cited in this paragraph speak for themselves. In addition, this allegation is a legal

conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

24. FirstDigital alleges that the referenced Telecommunications Act and the legislative history cited in this paragraph speak for themselves. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

25. FirstDigital alleges that the referenced Federal Communications Act, Telecommunications Act, and Cable Act speak for themselves. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

26. FirstDigital alleges that the referenced FCC Order speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

27. FirstDigital alleges that the referenced FCC Order speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

28. FirstDigital alleges that the referenced FCC Orders and other legal authority speak for themselves. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

29. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

30. FirstDigital alleges that the referenced Utah Public Utilities Act ("UPUA") speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

**II. Traverse Mountain Development in Lehi City**

31. FirstDigital admits that Lehi City is a municipality in Utah County. FirstDigital lacks information about the remaining allegations and accordingly denies them.

32. Admitted except as to the number of homes, about which FirstDigital lacks knowledge and accordingly denies it. FirstDigital further admits that the Traverse Mountain development has approximately 1,900 residential units. Unless otherwise admitted, denied.

33. FirstDigital alleges that the FCC Orders and other legal authority speak for themselves. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

34. FirstDigital denies that the Master Declaration of Covenants, Conditions, Restrictions, and Reservation of Easements is dated May 8, 2007, and was recorded with the Utah County Recorder on June 19, 2007, but admits that the Amended and Restated Master Declaration of Covenants, Conditions, Restrictions, and Reservation of Easements is dated May 8, 2007, and was recorded with the Utah County Recorder on June 19, 2007 ("Amended and Restated Master Declaration"). The Amended and Restated Master Declaration speaks for itself. In addition, this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

35. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

36. FirstDigital alleges that Exhibit B to the First Amended Complaint and the referenced Utah Code speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

37. FirstDigital admits Comcast purports to operate a cable system in Lehi City but lacks information about the authority for Comcast's operations, and accordingly denies the allegation. In addition, FirstDigital alleges that Exhibit C to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

38. FirstDigital alleges that Exhibit C to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

39. FirstDigital alleges that Exhibit C to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

40. FirstDigital lacks information about this allegation and accordingly denies it. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

41. FirstDigital lacks information about this allegation and accordingly denies it.

42. FirstDigital admits that Comcast has deployed its cable system networks at Traverse Mountain, but lacks information about the remainder of this allegation and accordingly denies it.

43. FirstDigital lacks information about this allegation and accordingly denies it.

44. FirstDigital lacks information about this allegation and accordingly denies it.

45. FirstDigital lacks information about this allegation and accordingly denies it.

46. FirstDigital lacks information about this allegation and accordingly denies it.

47. FirstDigital alleges that Exhibit D to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

48. FirstDigital alleges that Exhibit D to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

49. FirstDigital alleges that Exhibit D to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

50. FirstDigital alleges that Exhibit D to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

51. Admitted.

52. Admitted that, on a January 24, 2024 call with Comcast, FirstDigital's position to Comcast acknowledged Comcast's authority to install its cable system in any general-use PUEs at Traverse Mountain and admitted that FirstDigital asserted that Comcast may not access its private easement at Traverse Mountain without FirstDigital's permission, but denied as to the remainder of the allegation. Unless otherwise admitted, denied.

53. Admitted that, on a January 24, 2024 call with Comcast, FirstDigital's position to Comcast, FirstDigital acknowledged that other utilities (e.g., electric, water, and sewer) cross its private easement at Traverse Mountain without FirstDigital's permission but denied as to the remainder of the allegation. Unless otherwise admitted, denied.

54. Denied that FirstDigital "repeated these same assertions" in correspondence to Comcast dated January 26, 2024 and January 29, 2024. In addition, FirstDigital alleges that

Exhibits E and F to the First Amended Complaint speak for themselves. Unless otherwise admitted, denied.

55. FirstDigital alleges that Exhibits E and F to the First Amended Complaint speak for themselves. Unless otherwise admitted, denied.

56. FirstDigital lacks information about what Comcast charges, or would charge, its customers for broadband service, and accordingly denies it. In addition, FirstDigital alleges that Exhibits E, F, and G to the First Amended Complaint speak for themselves. The remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

57. Denied.

### III. Water's Edge Development in Vineyard City

58. FirstDigital admits that the property owners granted FirstDigital a private easement at Water's Edge, but denies that the private easement is a public utility easement and further denies that the property owners may not also grant Comcast a private easement at the development or that the private easement prohibits other facilities-based competitors from entering the development. Unless otherwise admitted, denied.

59. FirstDigital admits that Vineyard City is a city in Utah County. FirstDigital lacks information about the remainder of the allegation and accordingly denies them.

60. FirstDigital lacks information about this allegation and accordingly denies it.

61. FirstDigital alleges that the referenced FCC Order and other legal authorities speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which

no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

62. FirstDigital admits that a public utility easement exists at the Water's Edge development but denies that the public utility easement applies to communications providers. In addition, FirstDigital alleges that Exhibit H to the Amended Complaint speaks for itself. The remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

63. FirstDigital lacks information about Comcast's operation of its cable system and accordingly denies it. In addition, FirstDigital alleges that Exhibit I to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

64. FirstDigital alleges that Exhibit I to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

65. FirstDigital alleges that Exhibit I to the Amended Complaint speaks for itself. Unless otherwise admitted, denied.

66. FirstDigital lacks information about this allegation and accordingly denies it. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

67. FirstDigital alleges that Exhibit L and K to the First Amended Complaint speak for themselves. FirstDigital lacks information about the remaining allegations and accordingly denies them

68. FirstDigital lacks information about this allegation and accordingly denies it.

69. FirstDigital lacks information about this allegation and accordingly denies it.

70. FirstDigital alleges that Exhibit L of the First Amended Complaint speaks for itself. FirstDigital lacks information about the remaining allegation and accordingly denies them. Unless otherwise admitted, denied.

71. FirstDigital lacks information about this allegation and accordingly denies it.

72. FirstDigital alleges that Exhibit M to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

73. FirstDigital alleges that Exhibit M to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

74. FirstDigital denies that the property owners' grant of a private easement to FirstDigital at Water's Edge bars other communications providers from installing communications facilities in the PUE or any other location in Water's Edge. In addition, FirstDigital alleges that Exhibit M to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

75. FirstDigital denies that the property owners' grant of a private easement to FirstDigital at Water's Edge prohibits property owners in Water's Edge from allowing any other provide to install communications facilities on their private property. In addition, FirstDigital alleges that Exhibit M to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

76. Denied. In addition, FirstDigital alleges that Exhibit M to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

77. FirstDigital alleges that Exhibit L to the First Amended Complaint speaks for itself. FirstDigital lacks information about the remaining allegations and accordingly denies them. Unless otherwise admitted, denied.

78. FirstDigital admits that the property owners at Water's Edge granted it a private easement, but denies that the property owners may not also grant Comcast a private easement at the development or that the private easement grant to FirstDigital prohibits other facilities-based competitors from entering the development. Unless otherwise admitted, denied.

79. Denied.

80. FirstDigital lacks information about this allegation and accordingly denies it.

81. FirstDigital lacks information about this allegation and accordingly denies it.

82. FirstDigital lacks information about this allegation and accordingly denies it.

## CLAIMS

### I. Claims Regarding the Traverse Mountain Development in Lehi City

**FIRST CAUSE OF ACTION**
**Declaratory and Injunctive Relief – 28 U.S.C. §§ 2201 and 2202**
**(Against FirstDigital regarding Lehi City)**

83. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein.

84. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

85. FirstDigital alleges that the referenced Cable Act speaks for itself. Unless otherwise admitted, denied.

86. FirstDigital alleges that the referenced Cable Act and other authority speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

87. FirstDigital alleges that Exhibit C to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

88. FirstDigital alleges that Exhibit C to the Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

89. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

90. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

91. FirstDigital allege that the referenced Cable Act and the Lehi-Comcast Franchise speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

92. FirstDigital lacks information about this allegation and accordingly denies it.

93. FirstDigital admits that Comcast may use the Traverse Mountain PUE, but denies Comcast may use FirstDigital's private easement without permission or compensation. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

**<u>SECOND CAUSE OF ACTION</u>**
**Declaratory and Injunctive Relief – 47 U.S.C. § 401(b)**
**(Against FirstDigital regarding Lehi City)**

99. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein.

100. FirstDigital alleges that FCC orders, rules, or regulations speak for themselves. Unless otherwise admitted, denied.

101. Denied.

102. Denied.

103. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

104. Denied.

**<u>THIRD CAUSE OF ACTION</u>**
**Declaratory and Injunctive Relief – Utah Code Ann. §§ 5-2-1 et seq.**
**(Against FirstDigital regarding Lehi City)**

105. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein. In addition, the referenced Utah Code speaks for itself and the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

106. FirstDigital alleges that the provisions of the referenced Utah Code speaks for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

107. FirstDigital alleges that the provisions of the referenced Utah Code speaks for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

108. Denied.

109. Denied.

**FOURTH CAUSE OF ACTION**
**Intentional Interference with Economic Relations**
**(Against FirstDigital regarding Lehi City)**

110. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein.

111. FirstDigital lacks information about this allegation and accordingly denies it.

112. Denied.

113. Denied.

## II. Claims Regarding the Water's Edge Development in Vineyard City

**FIFTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief – 28 U.S.C. §§ 2201 and 2202**
**(Against FirstDigital regarding Lehi City)**

114. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein.

115. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

116. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

117. FirstDigital alleges that the referenced H.R. Rep. 98-934, 59, 1984 U.S.C.C.A.N. 4655, 4696 speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

118. FirstDigital alleges that Exhibit I to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

119. FirstDigital alleges that Exhibit I to the Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

120. FirstDigital alleges that Exhibit H to the Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

121. First Digital alleges that the referenced Cable Act and the Vineyard-Comcast Franchise speak for themselves. In addition, the remainder of this allegation is a legal

conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

122. First Digital alleges that the referenced Cable Act and the Vineyard-Comcast Franchise speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

123. First Digital alleges that the Vineyard-Comcast Franchise speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

124. First Digital alleges that the referenced Cable Act and the Vineyard-Comcast Franchise speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

125. Denied.

126. Denied.

127. FirstDigital admits that Comcast may not use FirstDigital's private easement without permission or compensation. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied

128. Denied.

129. Denied.

**SIXTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief – 47 U.S.C. § 401(b)**
**(Against FirstDigital regarding Lehi City)**

130. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein.

131. FirstDigital alleges that the referenced FCC orders, rules, or regulations speak for themselves. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

**SEVENTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief – Utah Code Ann. §§ 5-2-1 et seq.**
**(Against FirstDigital regarding Lehi City)**

136. FirstDigital incorporates its prior responses to Paragraphs 1 to 82 as though fully set forth herein. FirstDigital alleges that the referenced Utah Code speaks for itself. In addition, the referenced Utah Code speaks for itself and the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

137. FirstDigital alleges that the provisions of the referenced Utah Code speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

138. FirstDigital alleges that the referenced Utah Code speaks for itself. In addition, the referenced Utah Code speaks for itself and the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

139. Denied.

140. Denied.

**<u>EIGHTH CAUSE OF ACTION</u>**
**Intentional Interference with Economic Relations**
**(Against FirstDigital regarding Lehi City)**

141. FirstDigital incorporates its prior responses for Paragraphs 1 to 82 as though fully set forth herein.

142. FirstDigital lacks information about this allegation and accordingly denies it.

143. Denied.

144. Denied.

**<u>NINTH CAUSE OF ACTION</u>**
**Declaratory and Injunctive Relief – 28 U.S.C. §§ 2201 and 2202**
**(Against Vineyard City and the Vineyard Public Works Department)**

145. FirstDigital incorporates its prior responses for Paragraphs 1 to 82 as though fully set forth herein.

146. FirstDigital alleges that the referenced Cable Act speaks for itself. Unless otherwise admitted, denied.

147. FirstDigital alleges that the referenced Utah Code speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

148. Comcast alleges that Exhibit I to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

149. Comcast alleges that Exhibit I to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

150. Comcast alleges that Exhibit H to the First Amended Complaint speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

151. Comcast alleges that the referenced Utah Code speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

152. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

153. FirstDigital lacks information about this allegation and accordingly denies it.

154. FirstDigital lacks information about this allegation and accordingly denies it.

155. Denied.

156. FirstDigital alleges that the referenced Cable Act speaks for itself. Unless otherwise admitted, denied.

157. FirstDigital alleges that the referenced Cable Act speaks for itself. Unless otherwise admitted, denied.

158. FirstDigital alleges that the referenced Cable Act speaks for itself. In addition, the remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

159. FirstDigital lacks information about this allegation and accordingly denies it.

160. FirstDigital alleges that Exhibit I to the First Amended Complaint speaks for itself. Unless otherwise admitted, denied.

161. This allegation is a legal conclusion for which no response is required. To the extent a response is required, denied.

162. FirstDigital alleges that the referenced Cable Act, Utah Code, and the Vineyard-Comcast Franchise speak for themselves. In addition, FirstDigital lacks information about this allegation and accordingly denies it. The remainder of the allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

163. FirstDigital alleges that the referenced Cable Act, Utah Code, and the Vineyard-Comcast Franchise speak for themselves. In addition, In addition, FirstDigital lacks information about this allegation and accordingly denies it. The remainder of this allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

164. FirstDigital alleges that the referenced the Vineyard-Comcast Franchise speaks for itself. In addition, FirstDigital lacks information about this allegation and accordingly denies

it. The remainder of the allegation is a legal conclusion for which no response is required. To the extent a response is required, denied. Unless otherwise admitted, denied.

## PRAYER FOR RELIEF

1. Denied.
2. Denied (including the subparts).
3. Denied (including the subparts).
4. Denied (including the subparts).
5. Denied.
6. Denied.
7. Denied.
8. Denied.
9. Denied.

## AFFIRMATIVE DEFENSES

FirstDigital alleges the following separate and independent affirmative defenses to the Complaint, without assuming the burden of proof where such burden is otherwise on Comcast pursuant to applicable substantive or procedural law. Comcast reserves the right to amend or supplement its affirmative defenses and assert counterclaims that may become known during the course of discovery or otherwise.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to the extent the claims contained therein are barred by the equitable doctrines of unclean hands, and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, because Comcast, through its unlawful trespass, has waived the right, if any, to pursue their claims by reason of their own actions, omissions, and course of conduct.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or part, to the extent that the remedies sought by Comcast are not recoverable under applicable law.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or part, to the extent the claims are time-barred under the applicable statutes of limitations, statute of repose, or the doctrine of laches relating to the recordation of FirstDigital's private easements.

**SIXTH AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, because FirstDigital acted at all times in good faith and had reasonable grounds for believing that its conduct complied at all times with applicable laws and regulations.

**SEVENTH AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, because the claims are barred by the doctrine of primary jurisdiction.

**EIGHTH AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, because Comcast's claims are moot because Comcast already occupies FirstDigital's private easement.

**NINTH AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, because Comcast's requested remedies would violate the Fifth Amendment of the U.S. Constitution and article I, section 22 of the Utah Constitution.

**TENTH AFFIRMATIVE DEFENSE**

This action or any relief sought by Comcast is barred, in whole or in part, because Comcast would be unjustly enriched if it is granted access to use FirstDigital's private easement without compensating FirstDigital.

**ELEVENTH AFFIRMATIVE DEFENSE**

This action or any relief sought by Comcast is barred, in whole or in part, because Section 621(a)(2) of the Communications Act of 1934, as amended, 47 U.S.C. § 541(a)(2), does not provide a private cause of action to Comcast.

**TWELFTH AFFIRMATIVE DEFENSE**

This action or any relief sought by Comcast is barred, in whole or in part, because FirstDigital may have additional defenses that cannot now be articulated due to the generality of Comcast's pleadings and the fact that discovery has not yet been completed. Accordingly, FirstDigital reserves the right to supplement the foregoing and raise additional defenses as may appear as the case progresses.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaim Plaintiff FirstDigital Communications, LLC ("FirstDigital") hereby files these Counterclaims against Counterclaim Defendant Comcast of California / Massachusetts / Michigan / Utah, LLC ("Comcast").

## INTRODUCTION AND NATURE OF THE ACTION

1. This action arises out of Comcast's improper trespass in, and interference with, FirstDigital's lawful private easements at two residential developments in Utah: respectively, Traverse Mountain and Water's Edge. In both of those developments, FirstDigital holds private easements located on private land that have been encroached without permission by Comcast. FirstDigital's private easements on private land are not dedicated public utilities easements ("PUEs"), and do not interfere with other utilities' – including Comcast's – ability to access or operate in any PUEs at the developments.

2. Section 621(a)(2) of the Communications Act of 1934, as amended ("the "Communications Act"), 47 U.S.C. § 541(a)(2) (hereafter "Section 621(a)(2)"), does not give Comcast a legal right to access and operate in FirstDigital's private easements on private land unless the property owner voluntarily relinquishes ownership over the private land, for example by making it a general use PUE. *Cable Holdings of Georgia, Inc. v. McNeil Real Est. Fund VI, Ltd.*, 953 F.2d 600 (11th Cir. 1992). The property owners of the Traverse Mountain and Water's Edge developments have never voluntarily relinquished ownership over the private land that constitutes FirstDigital's private easement.

3. More specifically, Section 621(a)(2) "does not authorize a cable company to access private, non-dedicated easements which may exist." *Cable Holdings*, 953 F.2d at 609. Further, residential property owners are not required to accept utilities' installation of service connections in their property connecting to their facilities in the PUEs. *Id.* note 10. Rather, owners may choose to restrict or refuse utilities' services and infrastructure on private land, even if they grant such rights to other utilities. *See id.* at 610 (specific easements privately granted can confer limited rights of access to some utilities while at the same time restricting use to franchise cable company defendant).

4. Here, the property owners at the Traverse Mountain and Water's Edge developments have not chosen to grant Comcast private easements.

5. By contrast, as of September 30, 2014, the property owners at the Traverse Mountain granted a private easement that FirstDigital now holds to use their land for communications system infrastructure and facilities.

6. As of December 1, 2015, the property owners at Water's Edge similarly granted FirstDigital a private easement for the same type of use.

7. These private easements on private land grant FirstDigital an easement within those developments that other utilities may not infringe without permission from or compensation to the property owners or to FirstDigital.

8. Thus, although the property owners at the Traverse Mountain and Water's Edge developments designated PUEs on plats recorded with the Utah County Recorders Office, they never "voluntarily relinquished" the private property that contains FirstDigital's private easements, thereby preserving the fundamental nature of FirstDigital's private easements to a

specific company on private land. *See Cable Holdings,* 953 F.2d at 609-10 and note 10 (explaining that *Centel Cable Television Co. v. Thos. J. White Development, Corp.,* 902 F.2d 905 (11th Cir.1990), and *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir. 1988), are limited to their facts where "the property owner *voluntarily relinquished its rights of exclusion* by dedicating utility easements via plat recordation.") (emphasis added). As a consequence, Section 621(a)(2) is not a source of authority for Comcast to occupy and use FirstDigital's private easements on private land without permission or compensation.

9. Nevertheless, Comcast has misinterpreted Section 621(a)(2) to authorize it to occupy and use FirstDigital's private easements on private land without permission from, or compensation to, the property owner of First Digital. If Comcast's construction of Section 621(a)(2) were adopted, it would essentially, and impermissibly, render Section 621(a)(2) unconstitutional. Section 621(a)(2), however, should not be read that way. *See Cable Holdings,* 953 F.2d at 604-05 (construction of Section 621(a)(2) that creates serious questions regarding the potential unconstitutional taking of private property should be avoided).

10. In reliance on its mistaken construction of Section 621(a)(2), Comcast has constructed and is currently operating cable system facilities in FirstDigital's private easements on private land (and potentially on other portions of the private land in the developments). Comcast thereby is unlawfully trespassing in and interfering with FirstDigital's lawful private easements at the Traverse Mountain and Water's Edge developments.

11. Comcast's actions, including but not limited to its unlawful trespass in private easements and on private land at the developments, has harmed, and continues to harm,

FirstDigital. Comcast's unlawful trespass has resulted in numerous construction strikes causing physical damage to FirstDigital's network infrastructure, and has interfered with FirstDigital's relationship with the developments' property owners, including through a loss of customer revenue, repair costs, FirstDigital's issuance of customer outage credits, as well as reputational harm.

12. Comcast's actions have caused, and continue to cause, FirstDigital monetary damages and other harm which, if not enjoined, will continue. FirstDigital therefore seeks compensatory and other monetary damages, as well as declaratory relief, a permanent injunction, and judgment against Comcast for its trespass in, and interference with, FirstDigital's lawful private easements at the Traverse Mountain and Water's Edge developments and its damage to FirstDigital's network facilities in both developments.

## PARTIES

13. FirstDigital is a Utah limited liability company with its principal office at 357 South 670 West, Suite 300, Lindon, Utah 84042.

14. FirstDigital owns fiber networks in the western United States. FirstDigital deploys fiber installations for multifamily, single family, and mixed use developments that are made available for communications providers to access the residents and other tenants to provide their services. FirstDigital holds a Certificate of Public Convenience and Necessity ("CPCN") granted by the Public Service Commission of Utah to provide telecommunications services in the State of Utah.

15. Comcast is a Delaware limited liability company with its principal place of business is One Comcast Center, Philadelphia, Pennsylvania 19103.

16. Upon information and belief, Comcast is a franchised cable operator authorized to operate its cable systems in Lehi City, Utah, and Vineyard City, Utah, to provide cable, broadband, Internet-based voice services. Comcast does not hold a CPCN from the Public Service Commission of Utah and is therefore not authorized to provide intrastate telecommunications services in Utah.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction to adjudicate the Complaint and to grant the requested relief pursuant to 28 U.S.C. §§ 1331 requiring resolution of substantial questions under federal law and for declaratory and equitable relief under 28 U.S.C. §§ 2201 and 2202.

18. The Court has supplemental jurisdiction over Comcast's state law claims pursuant to 28 U.S.C. § 1367.

19. In addition, the Court also has jurisdiction to adjudicate this Complaint pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between FirstDigital and Comcast, and the amount in controversy exceeds $75,000 (exclusive of interest and costs).

20. This Court has personal jurisdiction over Comcast because Comcast transacts business in Utah and the harm to FirstDigital and subject matter of these Counterclaims arise out of its conduct of business in Utah.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

22. FirstDigital holds private easements on private land in two planned community developments in Utah: Traverse Mountain and Water's Edge.

23. Comcast currently claims that it may occupy and use FirstDigital's private easement on private land to deploy its cable system facilities without permission and without paying compensation to the property owners or FirstDigital. Comcast's claim is premised at least in part on a misconstruction of Section 621(a)(2) and, upon information and belief, is part of a larger effort to gain leverage in its contract negotiations with FirstDigital.

24. Early in 2024, FirstDigital and Comcast were engaged in negotiations about a contract for Comcast to access FirstDigital's network facilities in the private easement in the Traverse Mountain development. In the midst of pricing and technical discussions between the two companies, Comcast sued asserting a legal right to use and access FirstDigital's easements in the Traverse Mountain development without compensating FirstDigital for the use. Comcast added claims to the complaint seeking access rights to another development, Water's Edge, where access negotiations were anticipated.

25. Further, Comcast did not even wait for the Court to resolve the claimed rights in its Complaint before this Court. Instead, Comcast proceeded to install its cable facilities in both developments not only in the public rights of way but also in First Digital's private easements, ignoring FirstDigital's private easement rights on private land in both Traverse Mountain and Water's Edge. Comcast's actions are a trespass in, and interference with, FirstDigital's lawful private easements at the two developments.

**A. The Traverse Mountain Residential Development**

26. The Traverse Mountain development is part of a master planned community located in Lehi City, Utah. The master planned community development envisioned 5,812 total residential units, with 1 to 20 units per acre, and approximately 900 acres of canyon open space.

27. The Traverse Mountain development, referred to as the Existing and Platted Residential Planning District by Lehi City, is located in the southern area of the planned community, encompassing 474.2 acres, with approximately 1,900 residential units and 185 acres of parkland and community trails.

28. The plat for the Traverse Mountain development was dedicated on March 12, 2003, and recorded with the Utah County Recorder on July 21, 2003. *See* **Exhibit A**.

29. The plat "Notes" include the following statements (among others):

- "All P.U.E.'s are 10' wide unless otherwise noted."
- "The areas designated hereon as T.M. [*i.e.,* Traverse Mountain] Utility are private utility easements and are not dedicated for use by the general public but are for the use of those private utilities and telecommunications providers authorized by subdivider, its successors and assigns, pursuant to a written agreement."

30. The "P.U.E.'s" referenced in the plat Notes are PUEs.

31. The plat shows that the development's PUE is physically separate from the T.M. Utility designations. There is a 10-foot-wide PUE that runs parallel and next to a two-foot-wide "T.M. Utility" easement (with no overlap). As a result, no part of the T.M. Utility easement is a public utilities easement; rather, the T.M. Utility easement is a private utility easement on private land to which the "subdivider" (i.e., the developer) reserved the right to grant access to specific utilities and telecommunications providers.

32. In addition, the plat shows that the T.M. Utility does not block access to the development's PUE. The development's PUE rings the outside of the development and is

therefore accessible for general utility use. The T.M. Utility is not a barrier between facilities outside the development and the development's PUE.

33. The development is subject to an Amended and Restated Master Declaration of Covenants, Conditions, Restrictions, and Reservations of Easements, dated May 8, 2007, recorded with the Utah County Recorder on June 18, 2007. *See* **Exhibit B**. The Amended and Restated Master Declaration of Covenants, Conditions, Restrictions, and Reservations of Easements specifically reserved the T.M. Utility easement as a private utility easement on private land, stating:

> To the maximum extent allowed by law, Declarant excepts and reserves from the Telecommunications Easement Area and retains the right to transfer and assign exclusive and nonexclusive easements in gross for the purposes of installing, maintaining, operating and relocating Telecommunication Facilities and conducting Telecommunications Services in the Properties. Declarant also reserves, together with the right to grant and transfer all or a portion of the same, exclusive and nonexclusive easements in gross over and under the Telecommunication Easement Area for the purpose of access for the Telecommunications Services and to the Telecommunication Facilities. The easements reserved in this Section 6.6 are referred to as "Master Telecommunication Easement."

34. As of September 30, 2014, the property owners at the development granted a private easement within the T.M. Utility to Veracity Networks, LLC, in a document titled "Telecommunications Agreement," by and among Mountain Home Development Corporation and Veracity Networks, LLC, effective as of September 30, 2014.[1] **Exhibit B**. The Telecommunications Agreement granted Velocity Networks, LLC a "Residential License" for rights described in the Master Telecommunication Easement and was recorded with the Utah

[1] Additional parties are redacted from the exhibit.

County Recorder on October 6, 2014. FirstDigital subsequently acquired the assets of Veracity Networks, LLC, including the Residential License granted in the Telecommunications Agreement.

35. FirstDigital's Residential License at Traverse Mountain is a private easement within the T.M. Utility and located on private property.

36. The property owners at the Traverse Mountain development did not dedicate the easements on the private land in the development for general utility use nor grant Comcast any rights under the Master Telecommunication Easement.

**B. Water's Edge Residential Development**

37. The Water's Edge development is a master planned community located in Vineyard City, Utah. The master planned community development envisioned over 2,000 total residential units, with acres of open space, pathways, and parklands.

38. The property owners at the development granted rights to FirstDigital in the private communications easement in a document titled "Communications Easement Agreement," dated as of December 1, 2015, between Flagship Development, Inc., and FirstDigital ("Water's Edge Communications Easement"). The Water's Edge Communications Easement was recorded in December 2015, a year after the Communications Easement grant.

39. The plat for the Water's Edge development was dedicated on December 14, 2016, and recorded with the Utah County Recorder on January 4, 2017. *See* **Exhibit C**.

40. The plat "Notes" include the following statements (among others):

"Developer shall except from any public utility easement shown thereon, and reserve to itself and its designee, the right to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, remove, and manage communications facilities."

41. The plat further shows areas designated as "PUE to be dedicated Vineyard City" and "Common Space/PUE owned by HOA" and "Open space to be maintained by Vineyard City. Common space to be maintained by HOA."

42. No part of the Water's Edge Communications Easement is a PUE. The plat shows that the property owners did not voluntarily relinquish their property rights relating to communications utilities but excepted communications facilities and reserved to itself or its designee the rights to install and operate such facilities in the land under question in Comcast's Complaint and this Counterclaim. Specifically, the plat's "Owner Dedication" did not convey any property interest in the private communications easement to the public: neither within the HOA-owned Common Space/PUE portions of the development nor within the city-dedicated "Parcels A, B, and C" portions of the development on the plat. Instead, the developer reserved a the right to confer private easement on its private land to one or more specific communications utilities. By virtue of the Water's Edge Communications Easement, the developer granted such a private easement to FirstDigital

43. In addition, the plat shows that the reserved Communications Easement does not block access to any dedicated PUE available for communications utilities. Instead, the property owners reserved their private land for the creation of private communications easements. The reservation of the private communications easement as a private easement on private land allows

the property owners to grant one or more private easements to specific communications providers.

44. The Water's Edge Communications Easement expressly contemplates other potential communications providers offering cable services to residents of Water's Edge, although placement of communications facilities requires the residents' or FirstDigital's permission. **Exhibit D.**

45. The Water's Edge Communications Easement granted to FirstDigital is a private easement on private property.

46. The property owners at the Water's Edge development did not grant Comcast any rights under the plat's reserved communications easement. At the same time, FirstDigital has not "blocked" Comcast from accessing any general use PUE because Water's Edge does not have a general use PUE for communications facilities.

### C. Comcast's Negotiations with FirstDigital and Deployment on Private Land

47. In 2023, Comcast expressed a desire to deploy its cable system facilities at the Traverse Mountain and Water's Edge developments, and in early 2024, Comcast approached FirstDigital to negotiate access to and use of First Digital's private easements.

48. By entering into such negotiations, Comcast implicitly acknowledged that it may not deploy its cable system facilities on private land without permission and without compensation. In addition, Comcast's Construction Manager, among others, acknowledged that FirstDigital held a private easement at the Traverse Mountain development during the parties' negotiations.

49. However, apparently dissatisfied with the pricing and technical discussions between the two companies, Comcast sued FirstDigital seeking to use First Digital's private easements on private land, even though Comcast knew at the time it filed suit that it was not blocked from accessing or occupying any PUE at the developments.

50. In essence, Comcast's suit is not really seeking access and use of a PUE. To the contrary, it is really seeking rights to use private land without permission and without compensation – merely because it holds a cable franchise. That claim is legally unjustified.

51. However, without waiting for a final resolution of its suit against FirstDigital, Comcast proceeded to finalize deployment of its cable system facilities throughout the developments, including in FirstDigital's private easements and potentially in other areas of private land.

52. Comcast's deployment of its cable systems facilities and network infrastructure at the developments is extensive, stretching well-beyond buried fiber under public rights-of-way. For example, Comcast has installed above-ground coaxial cable pedestals (generally measuring about one to two feet tall), above-ground vaults (generally measuring about one foot tall), hung arial cable, and trenched and buried fiber conduits at the developments, both within FirstDigital's private easement and, upon information and belief, on other private land.

53. Comcast's deployment of its facilities on private land in the developments without having reached an agreement with First Digital is legally unjustified and is likely to continue until this Court enjoins Comcast's actions.

54. In addition, since Comcast did not coordinate with (or have permission from) FirstDigital for its cable system network deployment, Comcast's construction has result in, and

continues to result in, cuts, breaks, and disruption to FirstDigital's fiber facilities and conduit network facilities in FirstDigital's private easements at the developments. These frequent network disruptions have resulted in a loss of customers and revenue, imposed repair costs, and resulted in reputational harm for FirstDigital at the developments.

55. Comcast's actions are likely to continue until this Court enjoins Comcast's actions.

**FIRST COUNTERCLAIM CAUSE OF ACTION**
**(Declaratory Judgment and Injunctive Relief– Traverse Mountain)**

56. FirstDigital re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though set forth fully therein.

57. A present, actionable, and justiciable controversy exists with respect to the legal rights between the parties. Such controversy arises due to Comcast's claim to rights on private land based on its status as a cable franchise holder, and Comcast's installation of its cable facilities in FirstDigital's private easement on private land at the Traverse Mountain development.

58. As of September 30, 2014, the property owners at the Traverse Mountain granted a private easement in the form of a "Residential License," which FirstDigital now holds. This private easement on private land grants FirstDigital an easement within the development that other utilities may not infringe without permission or compensation.

59. Section 621(a)(2) of the Communications Act does not permit Comcast to access and operate in FirstDigital's private easement on private land unless the property owner voluntarily relinquished ownership over the private land, such as through the prior dedication of a general use PUE. *See Cable Holdings*, *supra.*

60. The property owners of the Traverse Mountain development and FirstDigital have never voluntarily relinquished ownership over the private land that constitutes FirstDigital's private easement. Nonetheless, Comcast is wrongly claiming a right to occupy and use private land without permission and without compensation based on Section 621(a)(2) of the Communications Act—which statutory provision, in fact, does not apply under the facts as alleged herein.

61. Based on its wrongly claimed right, Comcast has urged this Court and the governments of Lehi City to permit Comcast to use and occupy FirstDigital's private easement on private land without FirstDigital's permission and without compensating FirstDigital.

62. In addition, without permission and without compensation, Comcast has, and is likely to continue, to install its cable system facilities within private easements on private land at the Traverse Mountain development unless enjoined by the Court.

63. Comcast has installed, and is likely to continue to install, its cable system facilities within private easements on private land at the Traverse Mountain development without an agreement with, or other permission from, First Digital, unless enjoined by the Court. Upon information and belief, absent a declaratory judgment, Comcast will continue its wrongful practice of interfering with FirstDigital's private easement on private land in the future.

64. Comcast's use of FirstDigital's private easement on private land without permission and without compensation violates FirstDigital's property rights granted in the easement.

65. Accordingly, FirstDigital is entitled to a declaratory judgment, injunctive relief, and such further relief based upon that declaratory judgment as the Court deems proper, determining as follows:

(a) FirstDigital's private easement at the Traverse Mountain development is on private land;

(b) Section 621(a)(2) of the Communications Act and Comcast's status as a franchised cable provider thereunder does not grant Comcast the legal right to install its cable system facilities within private easements on private land at the Traverse Mountain development;

(c) Comcast's use of FirstDigital's private easement at the Traverse Mountain development is unlawful, and Comcast must remove any cable system facilities that are within the scope of FirstDigital's private easement at the Traverse Mountain development; and

(d) Comcast may not use any portion of FirstDigital's private easement at the Traverse Mountain development without FirstDigital's permission.

**<u>SECOND COUNTERCLAIM CAUSE OF ACTION</u>**
**(Declaratory Judgment and Injunctive Relief– Water's Edge)**

66. FirstDigital re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though set forth fully therein.

67. A present, actionable, and justiciable controversy exists with respect to the legal rights between the parties. Such controversy arises due to Comcast's claim to rights on private land based on its status as a cable franchise holder, and Comcast's installation of its cable facilities in FirstDigital's private easement on private land at the Water's Edge development.

68. On December 1, 2015, the property owners at Water's Edge granted FirstDigital a private easement. This private easement on private land grants FirstDigital an easement within the development that other utilities may not infringe without permission or compensation.

69. Section 621(a)(2) of the Communications Act does not permit Comcast to access and operate in FirstDigital's private easements on private land unless the property owner voluntarily relinquished exclusive ownership over the private land, such as through the prior creation of a general use PUE. *See Cable Holdings*, *supra.*

70. The property owners of the Water's Edge development and FirstDigital have never voluntarily relinquished exclusive ownership over the private land that constitutes FirstDigital's private easement on private property. Nonetheless, Comcast wrongly claims a right to occupy and use private land without permission and without compensation based on Section 621(a)(2) of the Communications Act—which, in fact, does not apply under the facts as alleged herein.

71. Based on its claimed right, has urged this Court and the government of Vineyard City to permit Comcast to use and occupy FirstDigital's private easement on private land without FirstDigital's permission and without compensating FirstDigital.

72. In addition, without permission and without compensation, Comcast has, and is likely to continue, to install its cable system facilities within private easements on private land at the Water's Edge development unless enjoined by the Court.

73. Comcast has installed, and is likely to continue to install, its cable system facilities within private easements on private land at the Water's Edge development unless enjoined by the Court. Upon information and belief, absent a declaratory judgment, Comcast will

continue its wrongful practice of interfering with FirstDigital's private easement on private land in the future.

74. Comcast's use of FirstDigital's private easement on private land without permission and without compensation violates FirstDigital's property rights granted in the easement.

75. Accordingly, FirstDigital is entitled to a declaratory judgment, injunctive relief, and such further relief based upon that declaratory judgment as the Court deems proper, determining as follows:

(a) FirstDigital's private easement at the Water's Edge development is on private land;

(b) Section 621(a)(2) of the Communications Act and Comcast's status as a franchised cable provider thereunder does not grant Comcast the legal right to install its cable system facilities on private land at the Water's Edge development;

(c) Comcast's use of FirstDigital's private easement at the Water's Edge development without permission is unlawful, and Comcast must remove any cable system facilities that are within the scope of FirstDigital's private easement at the Water's Edge development; and

(d) Comcast may not use any portion of FirstDigital's private easement at the Water's Edge development without FirstDigital's permission.

**THIRD COUNTERCLAIM CAUSE OF ACTION**
**(Trespass – Traverse Mountain)**

76. FirstDigital re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though set forth fully therein.

77. As of September 30, 2014, the property owners at the Traverse Mountain development granted FirstDigital a private easement. This conveyance conferred a private property interest on First Digital. FirstDigit's private property interest gives FirstDigital the right to exclude others from its easement, but only as to the scope of its private easement. FirstDigital's private easement does not affect others' private and public property access rights.

78. Comcast was aware that FirstDigital holds a private easement on private property at the Traverse Mountain development because, *inter alia*, the easement was publicly recorded and Comcast attempted to obtain rights to access and to use the private easement through negotiations with FirstDigital.

79. FirstDigital has not granted Comcast permission to enter or to use its private easement at the Traverse Mountain development.

80. Without permission and without compensating FirstDigital for its use of the private easement at Traverse Mountain, Comcast has constructed, and is currently operating, cable system facilities in FirstDigital's private easements on private land (and potentially on other portions of the private land in the development).

81. Comcast's use of FirstDigital's private easement at Traverse Mountain is an unjustified physical invasion of private easement land, and diminishes FirstDigital's ability to fully use and enjoy the property interests it holds in the Traverse Mountain development. Comcast's actions therefore are an unlawful trespass on FirstDigital's lawful private easement at the Traverse Mountain development.

82. Comcast's trespass on FirstDigital's private easement at Traverse Mountain has caused FirstDigital monetary damages in excess of $75,000 (exclusive of interest and costs) and other damages.

**FOURTH COUNTERCLAIM CAUSE OF ACTION**
**(Trespass – Water's Edge)**

83. FirstDigital re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though set forth fully therein.

84. As of December 1, 2015, the property owners at the Water's Edge development granted FirstDigital a private easement. This conveyance conferred a private property interest on First Digital. FirstDigit's private property interest gives FirstDigital the right to exclude others from its easement, but only as to the extent of its private easement. FirstDigital's private easement does not affect others' private and public property access rights.

85. Comcast was aware that FirstDigital holds a private easement on private property at the Water's Edge development because, *inter alia*, the easement was publicly recorded and Comcast attempted to obtain rights to access and to use the private easement through negotiations with FirstDigital.

86. FirstDigital has not granted Comcast permission to enter or to use its private easement at the Water's Edge development.

87. Without permission and without compensating FirstDigital for its use of the private easement at Water's Edge, Comcast has constructed, and is currently operating, cable system facilities in FirstDigital's private easements on private land (and potentially on other portions of the private land in the development).

88. Comcast's use of FirstDigital's private easement at Water's Edge is an unjustified physical invasion of private easement land, and diminishes FirstDigital's ability to fully use and enjoy of the property interests it holds in the Water's Edge development. Comcast's actions therefore are an unlawful trespass on FirstDigital's lawful private easement at the Water's Edge development.

89. Comcast's trespass on FirstDigital's private easement at Water's Edge has caused FirstDigital monetary damages in excess of $75,000 (exclusive of interest and costs) and other damages.

**FIFTH COUNTERCLAIM CAUSE OF ACTION**
**(Intentional Tortious Interference with Economic Relations)**

90. FirstDigital re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though set forth fully therein.

91. Comcast was aware that FirstDigital holds private easements on private land at the Traverse Mountain and Water's Edge development because, *inter alia*, the easements were publicly recorded and Comcast attempted to obtain rights to access and to use the private easements through negotiations with FirstDigital.

92. Despite its knowledge of private easements, Comcast intentionally trespassed on FirstDigital's private easements at the Traverse Mountain and Water's Edge developments by constructing its cable system facilities in the private easements.

93. Comcast's intentional trespass of FirstDigital's private easements at the Traverse Mountain and Water's Edge developments interferes with FirstDigital's relationship with property owners. Comcast's unlawful construction in FirstDigital's private easements has result in Comcast, and continues to result in, cuts, breaks, and disruption to FirstDigital's fiber and

conduit networks, causing frequent network disruptions, imposing repair cost, as well as causing a loss of customers, customer outage credits, as well as brand harm, for FirstDigital at the developments.

## PRAYER FOR RELIEF

WHEREFORE, FirstDigital requests that this Court:

94. Enter judgment in its favor, and against Comcast, on all Counterclaim Counts;

95. Issue a declaration judgment determining as follows:

(a) FirstDigital's private easements at the Traverse Mountain and Water's Edge developments are on private land.

(b) Section 621(a)(2) of the Communications Act and Comcast's status as a franchised cable provider does not grant Comcast the legal right to install its cable system facilities on private land at the Traverse Mountain and Water's Edge developments;

(c) Comcast's use of FirstDigital's private easements at the Traverse Mountain and Water's Edge developments is unlawful, and Comcast must remove any cable system facilities that are within the scope of FirstDigital's private easements at the Traverse Mountain and Water's Edge developments; and

(d) Comcast may not use any portion of FirstDigital's private easements at the Traverse Mountain and Water's Edge developments, without FirstDigital's permission.

96. Enter a permanent injunction against Comcast preventing Comcast from using private land for its cable system facilities, including FirstDigital's private easements, at the

Traverse Mountain and Water's Edge developments, without prior permission of the property holder(s) and FirstDigital;

97. Award FirstDigital compensatory, incidental, consequential, and punitive damages against Comcast for its intentional trespass on FirstDigital's private property rights at the Traverse Mountain and Water's Edge developments;

98. Award FirstDigital compensatory, incidental, consequential, and punitive damages against Comcast for its intentional interference with economic relations at the Traverse Mountain and Water's Edge developments;

99. Award all applicable pre- and post-judgment interest, and attorneys fees and costs to the extent permitted by law; and

100. Grant FirstDigital any other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 28th day of October, 2025.

PARR BROWN GEE & LOVELESS

*/s/ Kade N. Olsen*
Stephen Hale
James Ahlstrom
Kade N. Olsen

KELLEY DRYE & WARREN LLP

*/s/ Ira T. Kasdan*
Ira T. Kasdan
Edward A. Yorkgitis, Jr.

*Attorneys for Defendants*