# COUNTERCLAIMS EXHIBIT D

ENT 107462:2015 PG 1 of 9
Jeffery Smith
Utah County Recorder
2015 Dec 01 11:14 AM FEE 28.00 BY VM
RECORDED FOR Cottonwood Title Insurance Ag
ELECTRONICALLY RECORDED

PREPARED BY AND WHEN
RECORDED PLEASE RETURN TO:

Barton L. Gertsch, Esq.
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, Utah 84111-1537
portion of 18:016:0011

# COMMUNICATIONS EASEMENT AGREEMENT

THIS COMMUNICATIONS EASEMENT AGREEMENT (the "**Agreement**") is entered into as of the 1st day of December, 2015, between **Flagship Development, Inc.**, a Utah corporation ("**Grantor**"), whose address for purposes hereof is 170 S. 1200 E. #250, Lehi, UT 84043, and FIRSTDIGITAL TELECOM, LLC, a Utah limited liability company ("**FirstDigital**"), whose address is 90 South 400 West, Suite M-100, Salt Lake City, Utah 84101. (Grantor and FirstDigital are referred to in this instrument collectively as the "**Parties**," and individually as a "**Party**.")

## RECITALS

A. Grantor is the owner of the residential real estate development generally known as Water's Edge, located in Vineyard, Utah (such development together with related grounds, improvements, and facilities is referred to in this Agreement as the "**Project**"). The Project is depicted on the Site Plan attached hereto as Exhibit A (the "**Site Plan**"). The legal description of the property on which the Project is located (the "**Property**") is more particularly described on Exhibit B attached hereto.

B. FirstDigital is a certified competitive local exchange carrier authorized to provide communications services including voice, video, and high-speed data access in the state of Utah.

C. Due to the lack of any telecommunications facilities in the Project and the costs associated with providing high speed residential broadband services, Grantor has agreed to contract with FirstDigital to provide at FirstDigital's cost and expense the communications infrastructure to the Project as set forth below.

D. Grantor desires to have FirstDigital provide ongoing management and maintenance of such communications infrastructure in order to assist in accommodating the needs of the residents in the Project, maintaining the integrity of the Project's infrastructure during construction and the build out of the Project and providing maximum uptime for users.

E. Grantor desires to have FirstDigital's communications infrastructure available for use by other Communications Service Providers who interconnect with the communications network at the designated "Minimum Points of Entry," all in accordance with the terms of this Agreement, in order to help eliminate the duplication of facilities, prevent unnecessary trenching and the cutting of sidewalks and streets, and maintain the overall earth friendly, consistent and efficient use of resources within and throughout the Project.

## AGREEMENT

NOW, THEREFORE, FOR THE SUM OF TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Grantor hereby agrees as follows:

1. Definitions. As used in this Agreement, each of the following terms shall have the indicated meaning:

"**Communications Facilities**" means the facilities (e.g. fiber, copper and coaxial cables, towers, satellites, other broadcasting and receiving devices, conduits, junction boxes), beginning at the demarcation point or points at the boundary or boundaries of the Project and ending at the entry Demarcation Point at each residence in the Project, as applicable, by means of which the Communications Services are provided to the Resident, as such systems and facilities are updated, supplemented or replaced from time to time.

"**Communications Services**" means voice, video, telecommunications and high speed data access services and any other services as may be offered to Residents via Communications Facilities.

"**Communications Service Provider**" means any telecommunications company that is certified to provide Communications Services to customers in Utah.

"**Communications Services Agreement**" shall mean that Agreement executed of even date herewith, between Grantor and Grantee.

"**Demarcation Point**" means the physical and electrical boundary between a Resident's voice, video, telecommunications and high speed data equipment and the Communications Facilities installed and owned by FirstDigital.

"**Owner**" means each person, who, at any given time, holds fee title to the Property or any portion thereof.

"**Resident**" means each Owner and any resident or occupant of all or any portion of the Property.

2. Grant of Easement. Grantor conveys and grants to FirstDigital and its successors and assigns an exclusive easement and right-of-way to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, remove and manage Communications Facilities on, under over and across the Property up to a Resident's Demarcation Point(s). In addition, Grantor hereby grants to FirstDigital the sole and exclusive right and easement to design, engineer, construct, install, test, operate, maintain, repair, replace, relocate, and remove Communications Facilities in the Project up to a Resident's Demarcation Point(s) and to manage the way by which other Communications Service Providers shall gain access to such Demarcation Point(s). FirstDigital and its employees, agents, contractors, invitees, licensees shall have the right to access its Communications Facilities in the Project on a 24-hour-per-day 7-day-per-week basis.

3. Infrastructure. Each Owner will coordinate with FirstDigital to designate a mutually agreeable Demarcation Point(s) on its property and FirstDigital at its costs and expense will design, engineer, extend and install the Communications Facilities to such designated Demarcation Point(s).

4. Failure to Perform by First Digital. An Owner shall have the right to secure its own Communications Facilities and Services at its own cost and expense and to elect to terminate this Easement with respect to its property if FirstDigital breaches or fails to perform any obligation under this Easement and fails to cure such breach or failure within thirty (30) days after receipt of written notice from an Owner

describing such breach or failure; provided, however, that (a) if the nature of the breach or failure is such that more than 30 days are reasonably required to cure, prior to such Owner having the right to terminate this Easement with respect to its property, FirstDigital shall have such period as is reasonably necessary to cure so long as it commences the cure of such breach within the 30-day period and after such commencement diligently prosecutes the same to completion; and (b) in no event shall an Owner have the right to terminate this Easement with respect to any property that is needed or is being used to provide Communications Facilities and Communications Services to other Residents in the Project.

5. Repair of Damage. FirstDigital shall promptly repair any damage to the Project that is caused by FirstDigital's installation, use, maintenance, repair, or removal of Communications Facilities; provided that FirstDigital shall not be responsible for damage caused by Owner or other persons.

6. Ownership of Communications Facilities. FirstDigital will retain ownership of and title to all Communications Facilities installed at the Project by or on behalf of FirstDigital. The Communications Facilities will retain their character as personal property following their installation. In no event will the Communications Facilities installed at the Project by or on behalf of FirstDigital be deemed to be a fixture of the Project or of any Resident. Without limiting the generality of the foregoing, Owner shall not have the right to create any security interest in such Communications Facilities. FirstDigital shall have the right to grant a security interest in such Communications Facilities to one or more lenders and to assign its rights and obligations under this Agreement.

7. Other Communications Service Providers. FirstDigital recognizes and agrees that Residents in the Project are not obligated to select FirstDigital as their Communications Service Provider. In the event any such Resident selects another Communications Service Provider, such Resident shall not be obligated hereunder to compensate FirstDigital for Communications Services obtained by Resident from another Communications Service Provider and FirstDigital shall reasonably cooperate with such other Communications Service Provider and allow such Communications Service Provider access to the requesting Resident in accordance with the terms of an interconnection agreement between FirstDigital and such other Communications Service Provider which contains terms and conditions acceptable to FirstDigital. No such interconnection shall adversely impact FirstDigital's Communications Facilities or FirstDigital's ability to provide Communications Services to the Project. Notwithstanding anything to the contrary in this Section 7, FirstDigital shall be entitled to reasonable compensation from the interconnecting Communications Service Provider or the Resident for the reasonable costs and fees associated with an interconnection of the other provider's Equipment with FirstDigital's Communications Facilities.

8. Interconnection. All Communications Service Providers desiring to provide Communications Services to Residents will do so by interconnecting to FirstDigital's Communications Facilities. Other than FirstDigital, no Owner nor FirstDigital shall permit any other Communications Service Provider to disrupt, dig, or excavate any streets, common areas or other property, or install any Equipment within the Project without the prior written consent of the applicable Owner and FirstDigital, which consent shall not be unreasonably withheld, conditioned or delayed. FirstDigital will have the authority to interconnect a Communications Service Provider's communications facilities to FirstDigital's Communications Facilities and need not obtain permission from an Owner to do so.

9. Quality of Service. FirstDigital will provide and maintain a quality of service with respect to its Communications Facilities equal to or greater than Bellcore standards.

10. Nature of Provisions. The Parties expressly intend that the rights and easements granted to FirstDigital shall be easements in gross and shall: (a) constitute a covenant running with the Property; (b) bind every person and Owner having any fee, leasehold, mortgage lien or other interest in any portion of the

Property concerned; (c) bind any person and Owner whose title to the Property or any portion thereof is acquired by judicial foreclosure, trustee's sale, deed in lieu of foreclosure or other means.

11. Term of Agreement. Except as set forth in Section 4 above, this Agreement and the rights and easements granted to FirstDigital hereunder shall continue until (a) this Agreement is terminated by Grantor and FirstDigital or (b) the Communications Services Agreement expires or is terminated.

12. General Provisions. This instrument shall be governed by, and construed and interpreted in accordance with, the laws (excluding the choice of laws rules) of the State of Utah. This instrument shall inure to the benefit of, and be binding on, the Parties and their respective successors and assigns. Whenever possible, each provision of this instrument shall be interpreted in such manner as to be valid under applicable law; but, if any provision of this instrument shall be invalid or prohibited under applicable law, such provision shall be ineffective to the extent of such invalidity or prohibition without invalidating the remainder of such provision or the remaining provisions of this instrument.

The parties have executed this Agreement to be effective on the Effective Date.

**GRANTOR:**

**Flagship Development, Inc.,**
a Utah corporation

By: [signature]

Name: Peter Evans

Title: Authorized Signor

**FIRSTDIGITAL:**

**FirstDigital Telecom, LLC,**
a Utah limited liability company

By: [signature]

Name: WESLEY MCDOUGAL

Title: President

State of Utah )
) ss.
County of ~~Salt Lake~~ Utah )

The foregoing instrument was acknowledged before me this 30th day of Nov., 2015, by Peter Evans the authorized signer of Flagship Development, Inc.

(Seal)

Notary Public

SHANNA McCLURE
NOTARY PUBLIC • STATE OF UTAH
My Commission Expires Sept. 22, 2018
COMMISSION NUMBER 679272

State of Utah )
) ss.
County of Salt Lake )

The foregoing instrument was acknowledged before me this 1st day of DEC, 2015, by WESLEY McDOUGAL, the PRESIDENT of FIRSTDIGITAL TELECOM, LLC.

(Seal)

Notary Public

TEARA BRYAN
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 06/19/2019
Commission # 683807

TEARA BRYAN
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 06/19/2019
Commission # 683807

# EXHIBIT A

to

# COMMUNICATIONS EASEMENT AGREEMENT

Site Plan

[See attached]



EXHIBIT B

to

COMMUNICATIONS EASEMENT AGREEMENT

Legal Description of the Property

Beginning at a point which is West 185.20 feet and South 40.92 feet from the Southeast Corner of Section 7, Township 6 South, Range 2 East, Salt Lake Base and Meridian thence South 76°46'33" West 229.21 feet; thence Southwesterly 163.86 feet along the arc of a 709.50 foot radius curve to the right, through a central angle of 13°13'57, the chord of which bears South 83°23'32" West 163.50 feet; thence North 89°59'30" West 4.90 feet; thence Northwesterly 15.65 feet along the arc of a 10.00 foot radius curve to the right, through a central angle of 89°40'44, the chord of which bears North 45°07'00" West 14.10 feet; thence North 89°53'23" West 56.03 feet; thence Southwesterly 15.77 feet along the arc of a 10.00 foot radius curve to the right, through a central angle of 90°22'50, the chord of which bears South 44°54'47" West 14.19 feet; thence North 89°59'30" West 17.93 feet; thence North 00°16'37" West 30.65 feet; thence Northerly 63.92 feet along the arc of a 172.00 foot radius curve to the left, through a central angle of 21°17'38", the chord of which bears North 10°55'26" West 63.56 feet; thence Northerly 75.33 feet along the arc of a 200.00 foot radius curve to the right, through a central angle of 21°34'46", the chord of which bears North 10°46'52" West 74.88 feet; thence North 00°00'30" East 401.34 feet; thence Northeasterly 70.42 feet along the arc of a 43.00 foot radius curve to the right, through a central angle of 93°49'37", the chord of which bears North 46°55'19" East 62.81 feet; thence South 86°09'53" East 397.53 feet; thence Southeasterly 20.12 feet along the arc of a 228.00 foot radius curve to the right, through a central angle of 05°03'18", the chord of which bears South 83°38'14" East 20.11 feet; thence South 81°06'35" East 64.12 feet; thence Southerly 276.18 feet along the arc of a 1551.00 foot radius curve to the left, through a central angle of 10°12'09", the chord of which bears South 03°30'47" West 275.82 feet; thence Southerly 7.83 feet along the arc of a 81.50 foot radius curve to the right, through a central angle of 05°30'27", the chord of which bears South 01°10'01" West 7.83 feet; thence South 03°55'14" West 80.07 feet; thence Southerly 19.49 feet along the arc of a 118.50 foot radius curve to the left, through a central angle of 09°25'30", the chord of which bears South 00°47'31" East 19.47 feet; thence Southerly 108.54 feet along the arc of a 1563.00 foot radius curve to the left, through a central angle of 03°58'44", the chord of which bears South 07°30'10" East 108.52 feet; thence Southwesterly 14.31 feet along the arc of a 9.50 foot radius curve to the right, through a central angle of 86°17'16", the chord of which bears South 33°37'55" West 12.99 feet;

6.662 acres

Basis of Bearing: the line between the Southeast Corner of Section 7 and the South Quarter Corner of Section 8, Township 6 South, Range 2 East, Salt Lake Base and Meridian Which bears North 89°25'01" East